Stephen Todd **BOOKER**,
Petitioner-Appellant,

v.

Richard L. **DUGGER**,
Respondent-Appellee.

No. 86–3411.

United States Court of Appeals,
Eleventh Circuit.

Aug. 5, 1987.

Rehearing and Rehearing En Banc
Denied Sept. 25, 1987.

Wilmer, Cutler & Pickering, James E. Coleman, Jr., Washington, D.C., Marian Lindberg, Kornstein, Veisz & Wexler, New York City, for petitioner-appellant.

Gary L. Printy, Asst. Atty. Gen., Tallahassee, Fla., for respondent-appellee.

Before TJOFLAT, VANCE and CLARK, Circuit Judges.

VANCE, Circuit Judge:

On October 20, 1978, Stephen Todd Booker was sentenced to death by a Florida court for the murder and rape of a 94 year old woman. Booker appeals from the district court's denial of his third petition for federal habeas corpus and dismissal of his independent action brought pursuant to Federal Rule of Civil Procedure 60(b). We affirm.

## I.

This appeal grows out of Booker's claim, first raised in his second habeas petition, that he received ineffective assistance of counsel at trial. Booker was represented at trial by Stephen N. Bernstein, who was then an assistant public defender. Bernstein also represented Booker in his first petition for federal habeas corpus. Before this petition was filed, Bernstein informed his client that ineffective assistance of counsel was a basis for habeas corpus relief, but that he did not believe that this claim was viable in Booker's case. Bernstein also informed Booker that if he wished to pursue a claim of ineffective assistance of counsel, Booker would need to secure another lawyer. Booker chose to retain Bernstein as his habeas counsel, and thus Booker's first petition for federal habeas corpus omitted any claim of ineffective assistance of counsel. This petition was denied. *See Booker v. Wainwright,* 703 F.2d 1251 (11th Cir.), *cert. denied,* 464 U.S. 922, 104 S.Ct. 290, 78 L.Ed.2d 266 (1983).

Soon thereafter, Booker retained new lawyers. A second petition for habeas corpus relief was filed in federal court which claimed ineffective assistance of counsel. The petition alleged that Bernstein failed to investigate and present evidence of statutory mitigating factors at the sentencing phase of Booker's trial. Fla.Stat. § 921.-141. Booker argued that Bernstein's conflict of interest precluded him from asserting a claim of ineffective assistance of counsel. Booker contended that Bernstein did not raise this challenge in order to avoid an attack on Bernstein's effectiveness at trial. The district court held a hearing at which Bernstein testified concerning his representation of Booker. Booker did not call any other witnesses, nor did he testify himself. The federal courts dismissed this petition as an abuse of the writ, specifically noting that petitioner could have avoided dismissal if he had shown "that his habeas counsel deliberately prepared a petition which failed to challenge his trial performance, while actually believing that he had not provided effective assistance." *Booker v. Wainwright,* 764 F.2d 1371, 1378 (11th Cir.), *cert. denied,* 474 U.S. 975, 106 S.Ct. 339, 88 L.Ed.2d 324 (1985).

The case before us is an independent action filed by Booker pursuant to Federal Rule of Civil Procedure 60(b) [1] to set aside the denials of his first and second federal habeas petitions on the ground that Bernstein offered perjured testimony concerning his investigation of mitigating factors and took other actions to prevent Booker from presenting a claim of ineffective assistance of counsel.[2] Alternatively, Booker requests that his complaint be treated as a petition for federal habeas corpus under 28

---

**1.** Booker's action is based on the "savings clause" of Fed.R.Civ.P. 60(b) which reads in part: "[t]his rule does not limit the power of a court to entertain an independent action ... to set aside a judgment for fraud upon the court." Thus an independent action for relief can be maintained because of "fraud, accident, or mistake which prevented the defendant in the judgment from obtaining the benefit of his defense." *Bankers Mortgage Co. v. United States,* 423 F.2d

73, 79 (5th Cir.), *cert. denied,* 399 U.S. 927, 90 S.Ct. 2242, 26 L.Ed.2d 793 (1970).

The jurisdiction of the district court was ancillary to the two previous petitions that Booker seeks to reopen or set aside. *Pacific Railroad of Missouri v. Missouri Pacific Railway Co.,* 111 U.S. 505, 522, 4 S.Ct. 583, 592, 28 L.Ed. 498 (1884).

**2.** *See Ritter v. Smith,* 811 F.2d 1398 (11th Cir. 1987) (federal habeas judgment set aside under

U.S.C. § 2254.[3]  The district court denied Booker's habeas petition as an abuse of the writ, noting that Booker's claim that Bernstein committed a fraud upon the court was either "deliberately withheld [in the previous petition] or [its] omission was inexcusably neglectful."  The district court summarily dismissed Booker's independent action for relief from its prior rulings.

## II.

Booker alleges that Bernstein lied during the second habeas proceedings in order to protect his professional reputation.  Bernstein testified at the hearing for the second habeas petition that he met with two psychiatrists, George W. Barnard, M.D., and Frank Carrera III, M.D., both of whom had previously examined Booker to determine competence for trial and sanity at the time of the commission of the crime.  Bernstein stated that he relied on these psychiatrists' opinions in deciding not to introduce evidence of statutory mitigating factors.

Booker contends that no such meetings took place.  According to Booker, recent interviews with these psychiatrists indicate that they never evaluated him for mental mitigating factors and never rendered an opinion or assessment prior to the sentencing phase of his trial.  Booker asserts that the psychiatrists may not even have been aware of the existence in Florida of a mitigation statute for sentencing in capital cases.

Booker also alleges that on turning over representation to Booker's present counsel, Bernstein purposely omitted some handwritten notes purportedly relating to mental mitigating factors.  When the existence of these notes was finally discovered and the notes produced, the date appearing on the notes was altered from July 20, 1978, a date after Booker's sentencing hearing before a jury, to May 20, 1978, a date prior to that hearing.  Booker alleges that Bernstein altered this date in order to cover up his deficient representation.

Booker also submits the affidavit of Dr. Barnard giving his opinion that Booker was "under the influence of extreme mental or emotional disturbance."  Dr. Barnard's affidavit also expresses the opinion that "[t]he capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired."  Fla. Stat. § 921.141(6)(b) and (f).  Booker argues that this affidavit clearly demonstrates that he was prejudiced by Bernstein's ineffectiveness and would have prevailed in his second petition if Bernstein had not committed perjury.

## III.

Where relief from a judgment is sought for fraud on the court, the fraud must be established by clear and convincing evidence.[4]  "[C]onclusory averments of

Rule 60(b)(6) because of "extraordinary circumstances" involving change in law).

**3.** This petition constitutes Booker's third for federal habeas corpus relief.  Booker also has unsuccessfully pursued three actions in state court for post-conviction relief, one of which was recently decided by the Florida Supreme Court.  *See Booker v. Florida,* 503 So.2d 888 (Fla.1987).

To date, Booker has been granted three hearings concerning his claim of ineffective assistance of counsel.  On November 14, 1983, Booker was granted an evidentiary hearing before the Florida trial court where one of the issues before the court was whether Bernstein was ineffective in failing to investigate the existence of mitigating factors.  Bernstein and three expert witnesses testified at this hearing.  In December 1983, an evidentiary hearing was held in federal court on Booker's second petition, which alleged ineffective assistance of counsel.  The hearing focused on Booker's claim that

Bernstein failed to investigate the existence of mitigating factors.  Bernstein was the sole witness at this hearing.  On January 10, 1986, Booker was given another hearing before Florida's Eighth Judicial Circuit Court, this time on his petition alleging that Bernstein committed perjury at the previous hearing before that Florida court.  This petition was denied on January 27, 1986, and the denial was affirmed by the Supreme Court of Florida on January 5, 1987.  The state court held that Booker had failed to prove the alleged fraud.

**4.** The clear and convincing standard governs cases where relief is sought pursuant to Rule 60(b)(3) for "fraud, ... misrepresentation or other misconduct of an adverse party."  *See Montgomery v. Hall,* 592 F.2d 278 (5th Cir.1979); *Rozier v. Ford Motor Co.,* 573 F.2d 1332, 1339 (5th Cir.1978); *Saenz v. Kenedy,* 178 F.2d 417, 419 (5th Cir.1949).  *See also E.F. Hutton & Co., Inc. v. Berns,* 757 F.2d 215, 217 (8th Cir.1985);

the existence of fraud made on information and belief and unaccompanied by a statement of clear and convincing probative facts which support such belief do not serve to raise the issue of the existence of fraud...." *Di Vito v. Fidelity & Deposit Co. of Maryland*, 361 F.2d 936, 939 (7th Cir.1966). Booker's allegations are based upon facts which do not provide clear and convincing proof of fraud by Bernstein. This court is not limited to petitioner's conclusions concerning the testimony of the two psychiatrists. These two psychiatrists testified at length before a Florida circuit court on January 10, 1986. A record of that testimony is before this court. The issue before the Florida court was whether Bernstein perpetrated a fraud upon the Florida courts and, in particular, whether Bernstein lied when he testified before Florida's Eighth Judicial Circuit Court concerning his representation of Booker. The testimony given by the two psychiatrists is sufficiently broad for this court to conclude that these psychiatrists *cannot* offer clear and convincing evidence of any fraud committed by Bernstein on the federal district court. The two psychiatrists unequivocally state that they could not find any falsehood in Bernstein's testimony before the Florida court. *See* Excerpts from Transcript of Proceedings before the Florida Eighth Judicial Circuit Court (Jan. 10, 1986), Appendix A to this Opinion.

While the allegedly altered notes may cast doubt on Bernstein's testimony and representation of Booker, it does not provide clear and convincing evidence of fraud on the court. In addition, the significance of the allegedly altered notes diminishes when one considers that a second sentencing hearing without a jury was held in October 1978, *Booker v. State*, 441 So.2d 148, 150 (Fla.1983), and evidence of mitigating factors could have been introduced at that time. Even if we assume that Bernstein's only meeting with the psychiatrists to discuss the existence of mitigating factors occurred on July 20, 1978,[5] this does not compel the conclusion that Bernstein lied when he testified that he consulted with psychiatrists about mitigating factors.

■ Booker's attempt to reopen his second federal habeas petition must also fail because he has not established that his failure to assert fraud upon the court in that petition was not mere inadvertence. Among the elements generally necessary for relief from a prior judgment is "the absence of fault or negligence on the part of the defendant." *Bankers Mortgage Co. v. United States*, 423 F.2d 73 (5th Cir.), *cert. denied*, 399 U.S. 927, 90 S.Ct. 2242, 26 L.Ed.2d 793 (1970). *See also Winfield Associates v. Stonecipher*, 429 F.2d 1087, 1090 (10th Cir.1970) ("It must also appear that the situation in which the party seeking relief finds himself is not due to his own fault, neglect or carelessness.").[6] Where complainant's own negligence or oversight, however innocent, contributed to the original judgment, an independent action for relief is not proper unless the evidence which would establish injustice is "practically conclusive." [7] *Johnson Waste*

*Bunch v. United States*, 680 F.2d 1271, 1283 (9th Cir.1982); *Square Constr. Co. v. Washington Metropolitan Area Transit Authority*, 657 F.2d 68, 71 (4th Cir.1981). It is clear that the policy of finality of judgments requires the same, if not more stringent, standards be applied to independent actions alleging fraud on the court which are brought after the one year limit has run. *See Johnson Waste Materials v. Marshall*, 611 F.2d 593, 600 (5th Cir.1980); *Rozier v. Ford Motor Company*, 573 F.2d 1332 (5th Cir.1978); *United States v. Standard Oil Co. of California*, 73 F.R.D. 612 (N.D.Cal.1977), *aff'd*, 412 U.S. 924, 93 S.Ct. 2750, 37 L.Ed.2d 152 (1973).

**5.** It should be noted that there is no direct evidence that the only meeting concerning statu-

tory mitigating factors occurred on July 20, 1978.

**6.** The *Winfield Associates* court continued:

In this type of [independent] action, it is fundamental that equity will not grant relief if the complaining party "has, or by exercising proper diligence would have had, an adequate remedy at law, or by proceedings in the original action * * * to open, vacate, modify or otherwise obtain relief against, the judgment." 429 F.2d at 1090 (citations omitted).

**7.** We also note that the requirements of federal habeas corpus, including the abuse of the writ standard applied to successive writs, Rule 9(b), 28 U.S.C. § 2254, may properly be superim-

*Materials v. Marshall,* 611 F.2d 593, 595 (5th Cir.1980).

Booker does not adequately demonstrate to this court that his failure to interview these psychiatrists prior to the hearing on his second petition was anything other than an oversight. Booker was aware that Bernstein would testify about the steps he took to investigate possible mitigating factors, including Booker's mental condition. Had Booker's counsel met with these psychiatrists prior to the hearing on his second habeas petition, they would have been in position to challenge Bernstein's testimony at that time. Booker's counsel argue that their inquiry in the second petition was limited to Bernstein's apparent conflict of interest. They argue that they could not have anticipated that Bernstein was lying, nor that the law would require a showing that Bernstein committed fraud on the court in order to obtain habeas relief, as this court ultimately held on appeal.[8] This argument is meritless because counsel are charged with knowledge of a reasonable interpretation of the law. This is not a case where a legal standard was subsequently changed. *See Theriault v. Smith,* 523 F.2d 601 (1st Cir.1975) (relief sought pursuant to Rule 60(b)(5)). Booker was obliged in his previous petition to investigate all reasonable grounds for relief. Because the evidence proferred by Booker to establish injustice is far from conclusive, this failure to investigate Bernstein's testimony is fatal to Booker's action here.[9]

### IV.

Since Booker cannot offer clear and convincing evidence of fraud on the court, we conclude that the district court did not abuse its discretion in dismissing Booker's independent action under Rule 60(b).[10] Since we conclude that Booker has failed to give an adequate reason why he did not attempt to establish Bernstein's alleged fraud on the court in his second petition for federal habeas corpus, Booker's third petition was correctly held to be an abuse of the writ.

AFFIRMED.

### APPENDIX A

Excerpts of TRANSCRIPT OF PROCEEDINGS before the Honorable John J. Crews, Circuit Judge, held at the Alachua County Courthouse, Gainesville, Florida, on January 10, 1986.

[Testimony of Dr. Barnard:]

Q Do you recall a conversation with him [Bernstein] where a discussion was had as to the benefit of whether an official evaluation should be done because of the fact that you were Court appointed and because of your earlier examination of this defendant that the likelihood would be that an official evaluation as to mitigating factors would not have been beneficial to Mr. Booker?

A No, I don't remember it.

Q Are you saying that those did not occur?

A No, I am not saying that.

\* \* \*

Q Doctor, I want to separate what is your testimony about not knowing and what you can testify to directly. Can you

---

posed on this independant action. *Cf. Grayson v. Montgomery,* 421 F.2d 1306 (1st Cir.1970) (treating civil rights complaint seeking equitable relief from a conviction as a petition for federal habeas corpus).

8. Booker's counsel should have, under any circumstances, interviewed the two psychiatrists prior to the hearing to determine if Bernstein's alleged ineffectiveness was prejudicial. There is no indication in the record that Booker's present counsel had any contact with the two psychiatrists prior to March 1985, while the hearing on Booker's second petition was in 1983.

9. With respect to a habeas petition, the Fifth Circuit has adopted a rule that "[c]laims must be included in the prior petition if a competent attorney should have been aware of the claims at the time of the prior petition." *Moore v. Blackburn,* 774 F.2d 97, 98 (5th Cir.1985), *cert. denied,* — U.S. ——, 106 S.Ct. 2904, 90 L.Ed.2d 990 (1986).

10. *Hand v. United States,* 441 F.2d 529 (5th Cir.1971) (applying abuse of discretion standard to motion filed pursuant to Rule 60(b)(6)).

testify today directly from either your memory or from any notes that it is a fact that you did not talk with Stephen Bernstein indirectly, either in your office or in halls or at Dr. Carrera's office about mitigating circumstances?

A No, sir.

Q You cannot say that?

A I cannot say.

Q You simply do not have a memory of that?

A That's correct. I do not have a memory of that.

\*     \*     \*

[Testimony of Dr. Carrera:]

Q In that paragraph, if I might read the first sentence, it says, "To the best of my recollection neither the Court nor Mr. Stephen Bernstein, Esquire, Mr. Booker's attorney at the time ever requested that I evaluate Mr. Booker to determine whether there were mitigating factors." And it goes on.

A Yes.

Q My question has to do with the word evaluate. As you use this word, and as your use it to mean what you want to say in this paragraph, what do you mean when you say evaluate?

A Well, it has to be tied to what I am evaluating. And that is—How can I put it.

Q Let me ask it to you in a different way.

A. All right.

Q When you use this word, are you saying that you never had any meetings with Mr. Bernstein where you discussed mitigating factors?

A No, I would not say that.

Q Do you use it then in the medical sense of an official evaluation where you would do an interview and whatever else?

A Right. So it would be a formal professional exercise aimed at a specific focus. In this case, it would have been mitigating factors.

Q If Mr. Stephen Bernstein says that there was a meeting or meetings and/or discussions with you dealing with mitigating factors in the Booker case—

A Yes.

Q —are you saying in this Paragraph No. 5 that those did not occur?

A Those meetings did not occur? No, I am not saying that.

Q Or that those discussions did not occur?

A No, I am not saying that.

\*     \*     \*

Q Dr. Carrera, I show you what is a copy of the testimony of Mr. Stephen Bernstein at the November 1983 hearing, which I am going to ask the court to take judicial notice of as being in the file, and ask you, sir, if you had occasion at my direction to read that entire testimony of Stephen Bernstein on November 14, 1983 in this Court?

A Yes, sir.

Q Now, sir, my question to you is, do you deny, disagree or refute anything said by Mr. Bernstein in that testimony dealing with meetings with you or the subjects of conversations dealing with mitigating circumstances?

\*     \*     \*

Q Have you read the transcript, Dr. Carrera?

A Yes, I have.

Q Did you read it in mind with the point of trying to find out whether or not you would disagree or find fault or error with anything that was said?

A Yes, sir.

Q Did you take notes for that purpose to make sure that you would pick apart anything that you could find that you would definitely would say was wrong?

A Yes, sir.

Q Did you find anything in that transcript, sir, that you deny, disagree or refute Mr. Bernstein said in that testimony dealing with his meetings with you were the subject of his conversations dealing with mitigating circumstances?

A No, I don't have any disagreement about what was in the transcript.

Q  If Mr. Bernstein said that there was a meeting at your office and that there were other such meetings in the hallways and/or his office where you discussed mitigating factors, can you swear to the Court, sir, today, that that is not a fact?

A  I cannot swear to that.

Q  Did you mean to say that in your affidavit?

A  Did I mean to say?

Q  That Mr. Bernstein was lying?

A  No, I didn't mean to say that.