**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                                                    No. 97-7297

JEFFREY R. MACDONALD,
<u>Defendant-Appellant.</u>

Appeal from the United States District Court
for the Eastern District of North Carolina, at Fayetteville.
James C. Fox, District Judge.
(CR-75-26, CA-90-104-3-F)

Submitted: July 31, 1998

Decided: September 8, 1998

Before MURNAGHAN and NIEMEYER, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Wade Marvin Smith, Melissa H. Hill, THARRINGTON, SMITH,
L.L.P., Raleigh, North Carolina; Roger C. Spaeder, Bonnie Ilene
Robin-Vergeer, ZUCKERMAN, SPAEDER, GOLDSTEIN, TAY-
LOR & KOLKER, Washington, D.C.; Harvey A. Silverglate, Philip
George Cormier, Andrew Good, SILVERGLATE & GOOD, Boston,
Massachusetts; John J.E. Markham, II, MARKHAN & READ, Bos-
ton, Massachusetts, for Appellant. Brian M. Murtagh, John F. DePue,

UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Jeffrey MacDonald appeals the district court's order denying his motion to reopen his second habeas corpus petition, denied by the district court in 1991 and affirmed by this Court in United States v. MacDonald, 966 F.2d 854 (4th Cir. 1992). His motion is based on newly discovered evidence purporting to demonstrate MacDonald's innocence and that agent Michael Malone of the Federal Bureau of Investigation perpetrated a fraud upon the district court and this Court which led to the denial of MacDonald's 1990 petition for habeas corpus relief. The district court denied the motion based on its finding that MacDonald could not establish fraud upon the court, but construed MacDonald's claims of innocence as another request for habeas relief, requiring consideration by this Court under the successive habeas provisions of 28 U.S.C.A. § 2244 (West Supp. 1998). We denied leave to file a successive habeas petition by order on October 17, 1997, but in the same order remanded to the district court for the limited purpose of permitting MacDonald to conduct DNA testing. See In re Jeffrey MacDonald, No. 97-713. Hence, this appeal is limited to consideration of MacDonald's claim of fraud upon the court.

We need not restate here the extensive facts and procedural history of this case. Thus, we recount only that which is necessary to understand the issues raised in this appeal. MacDonald has steadfastly contended since the time of the murders that his family was killed by a group of intruders that included a blond woman wearing a floppy hat. The defense believes this blond woman to be Helena Stoekley, who

2

on numerous occasions confessed to participating in the murders with a group of men.

When the defense called Stoekley to the stand during MacDonald's trial, she testified that, due to heavy drug use, she could not remember her whereabouts during the hours the murders were committed. The defense attempted to call witnesses to whom Stoekley had confessed her participation in the murders to testify, but the district judge, after conducting a voir dire examination of the proposed witnesses, would not allow their testimony because of Stoekley's unreliability and the absence of evidence corroborating her claims that she was in the Mac-Donald home on the night of the murders.

In his 1990 petition, MacDonald alleged that the prosecution withheld from the defense evidence which could have corroborated Stoekley's presence in the MacDonald home at the relevant time, in violation of Brady v. Maryland, 373 U.S. 83 (1963), and Alcorta v. Texas, 355 U.S. 28 (1957). MacDonald asserted, specifically, that the Government withheld laboratory notes referencing the presence of three blond synthetic hairs made of a substance called saran, found in a clear handled hairbrush in the kitchen of the MacDonald home, as well as unsourced black and green fibers found on the murder weapon and the body of Collette MacDonald. See MacDonald, 966 F.2d at 856-57.

The district court denied the 1990 petition on the grounds that the fiber evidence at issue was not material, that the Government violated no duty to disclose exculpatory evidence, and because the petition was barred under the abuse of the writ doctrine. See United States v. MacDonald, 778 F. Supp. 1342 (E.D.N.C. 1991). We affirmed on abuse of the writ grounds, agreeing with the district court's assessment that MacDonald failed to establish cause for failing to raise his claims earlier, and further agreeing with the district court that the hair and fiber evidence at issue were insufficient to make a colorable showing of factual innocence so as to place this case within the fundamental miscarriage of justice exception to procedural bar provided in McCleskey v. Zant, 499 U.S. 467 (1991).

Both the district court's opinion and this court's opinion relating to the 1990 petition reference affidavits submitted by agent Malone on

3

behalf of the Government. In those affidavits, Malone cites to the various sources and factors he considered in arriving at his conclusion that the blond fibers found in the hairbrush did not come from a cosmetic wig, but likely came from a doll. In his motion to reopen, MacDonald asserts that since the denial of his 1990 petition, he has discovered new evidence that Malone's affidavits contained false statements which misled the district court and this court about the strength of his claims of innocence, which bear on the application of the abuse of the writ doctrine. MacDonald avers that Malone's failure to disclose this information constitutes a fraud upon the court, and warrants reopening his 1990 petition under Fed.R.Civ.P. 60(b)(6).

The allegedly new evidence relevant to MacDonald's fraud claims consists of two reference texts containing statements contrary to some of Malone's statements about saran and documents reflecting interviews the Government and the defense team conducted with a manufacturer of synthetic fibers and two employees of Mattel Toys, Inc. In denying MacDonald's motion to reopen, the district court found that the new evidence was not material to the disposition of the 1990 petition, and that none of the facts asserted by MacDonald, viewed in a light most favorable to him, established fraud upon the court by clear and convincing evidence.

Initially, we reject MacDonald's assertion that the district court should have applied a less demanding standard of proof. It is settled that the clear and convincing standard applies in Rule 60(b)(3) cases alleging fraud upon the court. See Shepherd v. American Broadcasting Cos., Inc., 62 F.3d 1469, 1477 (D.C. Cir. 1995) (collecting cases); Square Const. Co. v. Washington, 657 F.2d 68, 71 (4th Cir. 1981). The policies underlying the application of that standard in Rule 60(b)(3) cases apply with as much, if not greater force, in cases alleging fraud under the savings clauses of Rule 60(b). See Booker v. Dugger, 825 F.2d 281, 284 n.4 (11th Cir. 1987). We are also mindful of MacDonald's belief that the district court could not find this standard satisfied without conducting an evidentiary hearing, which it did not do. We find, however, that the district court could properly deny the motion if, assuming the new facts MacDonald asserts to be true, such facts could not establish fraud by clear and convincing evidence. See Madonna v. United States, 878 F.2d 62, 64-65 (2d Cir. 1989).

4

We also reject, however, the Government's position that MacDonald's motion alleging fraud upon the court is foreclosed under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-032, 110 Stat. 1214 ("AEDPA"). The Government contends that MacDonald is effectively attempting to circumvent the amended versions of 28 U.S.C.A. §§ 2244 and 2255, requiring leave from the court of appeals before filing a successive petition, by proceeding under Rule 60(b), in violation of the AEDPA's finality goals. As the Government points out, however, courts recognized, even before the AEDPA, that an aggrieved party may not circumvent the rules prohibiting successive habeas petition by simply labeling such a petition as a Rule 60(b) motion. See Felker v. Turpin, 101 F.3d 657, 661 (11th Cir. 1996). Nonetheless, this did not prevent a party who had previously filed a habeas petition from asserting that a prior petition had been denied based on fraud, unless the grounds for fraud themselves should have been raised in an earlier proceeding. See Booker, 825 F.2d 281 (11th Cir. 1987). The AEDPA does not alter these considerations, and the Government cites no case, before or after the AEDPA, in which a defendant's claims of fraud upon the court under Rule 60(b)(6) were found to be barred under the abuse of the writ doctrine.

The abuse of the writ doctrine bars new actions based on claims that should have been raised earlier. Actions alleging fraud upon the court, by contrast, attack the validity of a prior judgment, based on the theory that "a decision produced by fraud on the court is not in essence a decision at all and never becomes final." See 11 Wright and Miller, Federal Practice and Procedure § 2870 at 409 (1995) (quoting Kenner v. Commissioner of Internal Revenue, 387 F.2d 689, 691 (7th Cir. 1968)). Hence, different finality considerations apply to these distinct actions. We therefore find that neither the abuse of the writ doctrine, nor any codification of that doctrine through the AEDPA, acts as an absolute bar to a litigant's right to attempt to reopen a previously denied habeas petition on grounds that the court's decision was the product of a fraud upon the court.

The precise elements of such a claim are somewhat nebulous. We have said that fraud upon the court is "typically confined to the most egregious cases, such as bribery of a judge or juror, or improper influence exerted on the court by an attorney, in which the integrity of the court and its ability to function impartially is directly impinged."

5

Great Coastal Exp. v. International Broth., Etc., 675 F.2d 1349, 1355-56 (4th Cir. 1982). MacDonald contends that he need only show that Malone acted with reckless disregard for the truth in order to prevail in this case. While the Sixth Circuit's decision in Demanjuk v. Petrovsky, 10 F.3d 338, 349 (6th Cir. 1993), supports this position, that decision represents a minority view. See Robinson v. Audi Aktiengesellschaft, 56 F.3d 1259, 1266-67 (10th Cir. 1995). Moreover, it is at odds with our decision in Great Coastal, where we rejected a claim of fraud upon the court because "we cannot say that the fraud in this case presents a deliberate scheme to directly subvert the judicial process." Great Coastal Exp., 675 F.2d at 1356.

Our decision in Great Coastal Express requires that MacDonald at least establish that the fraud was material and deliberate. Id. at 1353-56. We agree with the district court's finding that MacDonald cannot establish that evidence regarding the source of the saran fibers was material to the district court's 1991 decision. Judge Dupree left no doubt that even if evidence tending to corroborate MacDonald's claims of intruders existed, it would not have changed his decision to exclude Stoekley's out of court admissions, because the "primary reason" for the exclusion was Stoekley's "utter unreliability" on the stand. See United States v. MacDonald, 778 F.Supp. 1342, 1352 (E.D.N.C. 1991). We have also previously concluded that Stoekley's pretrial and post trial statements would not have produced a different result, and that such evidence was properly excluded at trial. See United States v. MacDonald, 779 F.2nd 962, 964-65 (4th Cir. 1985).

Moreover, the evidence at issue is not truly exculpatory. It does not directly bear on the question of innocence but rather provides some evidence to support the theory that the hairs found in the hairbrush came from a wig. The evidence, however, is not particularly compelling on this point, as much of it is equivocal and contradictory regarding the uses of saran, and the overall weight of the evidence still suggests that the fibers most likely did not come from a human wig. Even if it is accepted that the fibers came from a human wig, however, this fact does little more to prove MacDonald's claim of innocence because it merely provides some support for yet another theoretical possibility; that the wig fibers found in the hairbrush came from an intruder.

6

In our most recent decision in this case, we stated:

> The most that can be said about the evidence is that it raises speculation concerning its origins. Furthermore, the origins of the hair and fiber evidence have several likely explanations other than intruders. The evidence simply does not escalate the unease one feels with this case into a reasonable doubt.

United States v. MacDonald, 966 F.2d at 860.

At the time that we made this comment, MacDonald had already alerted us to the previously mentioned Dembeck and Stout reference texts, and the parties had addressed their significance at oral argument and in written submissions to the court. Thus, it was already clear that the defense might be able to adduce further evidence that saran could be used to make human wigs. Because the evidence MacDonald relies on to support his motion to reopen simply creates further speculation about the origin of the saran fibers in the hairbrush, we find that such evidence is not material to the question of his innocence, and therefore was not material to the outcome of his 1990 petition for habeas corpus relief. We therefore hold that the district court properly denied MacDonald's motion to reopen on materiality grounds.

We also conclude that the district court properly found that MacDonald failed to present facts which could clearly establish that Malone deliberately deceived the district court or this court. There is no evidence that Malone ever consulted the Dembeck and Stout texts, so it is irrelevant that those texts contain statements contrary to the texts Malone consulted and cited to support the statements he made in his affidavits. Although MacDonald avers that the Government listed the Dembeck and Stout texts among the items it actually reviewed in connection with his case in response to his request for such documents under the Freedom of Information Act ("FOIA"), the record discloses that MacDonald's FOIA requests were sufficiently broad as to also request relevant information which was not reviewed by the Government.

Information derived from Edward Oberhuas, an executive at Kaneka America Corporation, which produces modacrylic fibers for

7

use in making wigs, provides even less support for MacDonald's case. MacDonald's FOIA requests uncovered the FBI's interview summary ("Form 302") of its conversations with Oberhaus, reflecting that he told investigators that he was familiar with the production and use of saran fibers, presently and before 1969-70. He further stated that saran could not be produced as a "tow" fiber (which is essential to the wig-making process) but could only be made as a continuous filament fiber unsuitable for the manufacturing of cosmetic wigs. He further stated that to the best of his knowledge, saran has never been used to make cosmetic wigs.

When, however, the FBI drafted an affidavit consistent with the information in its 302 form, Oberhaus refused to sign it, because he did not consider himself an expert on the uses of saran. Oberhaus then drafted his own affidavit for the Government, stating that wigs made from 1960 forward were "most often ... manufactured with human hair, modacrylic fibers, other fibers or a combination of any of these filaments." During the defense's conduction of its investigation to support MacDonald's motion to reopen, Oberhaus told them that he recalled telling the Government's investigators that saran fibers were used in the doll industry, but that this did not mean that they were not also used in the wig industry.

Neither the information in Oberhaus' form 302, nor the statements made in the affidavit he personally prepared, contradict any statement made by Malone. In fact, they are supportive of Malone's affidavits. Moreover, the fact that Oberhaus refused to sign the Government's affidavit does not mean that he retracted or recanted his prior beliefs. There are a variety of possible motives for this decision, not the least likely of which is Oberhaus' explanation that he did not consider himself sufficiently expert for the Government to rely on him. Finally, Oberhaus' comment to the defense during its independent investigation lacks probative value.

For the most part, the statements of Schizas and Philips also do not contradict Malone's affidavits. Both acknowledged that saran is primarily used to make doll hair, rather than cosmetic wigs. And while both did state that they were unaware of any doll made by Mattel having hair of the length of the fibers found in the clear handled hairbrush (22 and 24 inches), Schizas told investigators that it was

8

possible that a hair of such length could have come from a doll if the hair was doubled over in the rooting process. She thought this to be possible but not probable, however, because it would be difficult to extract a hair of such length from a doll without breaking the fiber. Because none of these statements directly contradict Malone's affidavits, we find them insufficient to even potentially establish fraud upon the court.

As the district court noted, the only statement from either Schizas or Philips which directly contradicts Malone's affidavits is Philips' statement to the defense team that she recalls telling Government investigators that saran could be manufactured in tow form. To conclude that this statement establishes fraud requires an enormous leap. There is some question whether Philips in fact made this statement. Her 302 form does not reflect it, and MacDonald has not alleged that the Government falsified these forms. Moreover, her statement is based on a recollection made many years after the fact.

Assuming, however, that Philips made the statement, it still could not constitute clear and convincing evidence of fraud. There is no indication that Philips was an expert on manufacturing techniques, and both the manufacturing expert (Oberhaus) the Government consulted as well as the six reference texts reviewed by Malone contradicted this opinion. Viewed in the context of the other evidence before him, Philips' comment is insufficient to support the conclusion that Malone knew his statements regarding the uses of saran to be false. Accordingly, we find insufficient evidence in this record to even potentially establish that the Government, through agent Malone, deliberately deceived the court.

We also conclude that under the circumstances of this case, MacDonald must bear accountability for his failure to present his claims of fraud in his previous petitions. Even actions under the savings clauses of Rule 60(b) must be brought within a reasonable time under the rule. Fed.R.Civ.P. 60, Advisory Note, Subdivision (b). While there is authority stating that an action for fraud upon the court will not be barred due to party dilatoriness if the evidence of injustice is "practically conclusive," see Booker, 825 F.2d at 284, or where the fraud at issue would cause injury to the public, see Hazel-Atlas Glass

9

Co. v. Hartford-Empire, 322 U.S. 238, 246 (1944), we find these exceptions inapplicable to this case.

As we noted in our most recent decision in this case, lab notes relating to the synthetic blond hairs at issue were seen and passed over by counsel during MacDonald's first habeas appeal. We observed that the defense team considered the significance of this evidence at the time but deliberately bypassed the opportunity to use it. United States v. MacDonald, 966 F.2d at 860. Also, this is not a case where the Government's exclusive control of the evidence should have prevented the defense from uncovering the alleged fraud. The defense team apparently discovered the Dembeck and Stout texts in a public library. And while MacDonald's lawyers could not be expected to know of specific individuals the government interviewed within the manufacturing and retail sectors of the wig and synthetic fiber industries, access to persons with similar if not the same information has always been just as available to the defense as it was to the Government. Indeed, MacDonald's lawyers now attempt to submit such independently acquired evidence.

We are aware that the acquisition of merely contradictory evidence would not necessarily constitute evidence of fraud. But the defense team has been reviewing the Government's evidence through requests under the Freedom of Information Act since 1982, see United States v. MacDonald, 778 F.Supp. at 1347, and should have been able to uncover, at least prior to MacDonald's second petition, not only evidence which merely contradicted Malone's statements but also the very same evidence now presented in support of the motion to reopen. MacDonald's attorneys were obligated to investigate all reasonable grounds for relief in connection with MacDonald's previous petitions. See Booker, 825 F.2d at 285. Their failure to do so provides another reason why the motion to reopen was properly denied.

We therefore affirm the order of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

10