[PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 24-11661

_____

JAMIE MILLS,

Petitioner-Appellant,

*versus*

COMMISSIONER, ALABAMA DEPARTMENT OF
CORRECTIONS,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 6:17-cv-00789-LSC

_____

2                    Order of the Court                    24-11661

Before WILLIAM PRYOR, Chief Judge, and LUCK and ABUDU, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

Jamie Mills, an Alabama inmate scheduled to be executed on May 30, 2024, for committing two murders in 2004, seeks a certificate of appealability for the denial of his motion for relief from the judgment denying his petition for a writ of habeas corpus in 2020. *See* FED. R. CIV. P. 60. Because no reasonable jurist could conclude that the district court abused its discretion, we deny Mills's application and deny as moot his motion to stay his execution.

## I. BACKGROUND

In 2007, an Alabama jury convicted Jamie Mills of the capital murders of Floyd and Vera Hill. The trial court accepted the jury's recommendation and sentenced him to death. *See Mills v. State*, 62 So. 3d 553, 556 (Ala. Crim. App. 2008). After Mills and his common-law wife, JoAnn, plotted to rob the Hills, Mills "brutally executed" the Hills "with a machete, tire tool[,] and ball-peen hammer." *Id.* at 557 (citation and internal quotation marks omitted). JoAnn testified against her husband at his trial and later pleaded guilty to murder and was sentenced to life with the possibility of parole.

Mills moved for a new trial on the ground that JoAnn had perjured herself by denying that she testified against him to procure leniency for herself. The trial court denied the motion. The Alabama Court of Criminal Appeals affirmed, *see id.* at 574, and the Supreme Court of Alabama denied Mills's petition for a writ of

certiorari on that issue. Mills also later unsuccessfully sought post-conviction relief under Alabama Rule of Criminal Procedure 32.

Mills petitioned the district court for a writ of habeas corpus in 2017. The district court denied relief on November 30, 2020. We denied his motion for a certificate of appealability, and the Supreme Court denied his petition for a writ of certiorari on April 18, 2022.

On January 29, 2024, the State of Alabama moved to set an execution date. In March 2024, Mills filed a successive motion under Rule 32 in state court. With that motion, he offered, for the first time, an affidavit by JoAnn Mills's attorney, Tony Glenn. Glenn alleged that he had "had several discussions" in 2007 with the district attorney, Jack Bostick, "about a plea offer based on [JoAnn's] tragic mitigation history and her potential testimony at Jamie Mills'[s] upcoming trial." Glenn alleged that Bostick and the victims' family "agreed" that JoAnn would receive a plea deal for "life with parole," instead of capital murder, if she "testified truthfully" at Mills's trial. Glenn alleged that these discussions involving Bostick and the victims' family were recorded on his fee declaration, which Mills attached. And Glenn alleged that the first time he spoke with "any attorneys from the Equal Justice Initiative"—which has represented Mills since 2009—about the matter was February 23, 2024, nearly two years after the Supreme Court denied certiorari.

On April 5, 2024—three-and-a-half years after the district court denied his habeas petition—Mills moved for relief under Federal Rule of Civil Procedure 60. He argued that "[n]ewly discovered

evidence"—the Glenn affidavit and attached declaration—established that Bostick had "engaged in egregious misconduct" by "affirmatively and falsely stat[ing]" to the trial court that "there was no deal" with JoAnn to testify against her husband. Mills sought relief under Rule 60(b)(2), Rule 60(b)(3) and (d), and Rule 60(b)(6).

The district court denied relief on each ground. First, under Rule 60(b)(2), which allows relief for "newly discovered evidence" that "could not have been discovered" with "reasonable diligence" in time to move for a new trial, the district court denied the motion as untimely. It explained that the motion had to be filed "no more than a year after the entry of the judgment or order" from which the party seeks relief. *See* FED. R. CIV. P. 60(c)(1). It alternatively denied relief because Mills failed to exercise reasonable diligence. Mills had known since 2007 that Glenn represented JoAnn and had been arguing since then that she perjured herself. Yet Mills did not approach Glenn until 2024 to discuss whether JoAnn struck a secret plea deal. Mills "offer[ed] no reason why he could not have spoken with Glenn or obtained [his] . . . fee declaration" before then. Second, the district court denied relief under Rule 60(b)(3) and (d). It ruled that relief under Rule 60(b)(3)—for the opposing party's "fraud," "misrepresentation," or "misconduct"—was untimely. *See id.* It also ruled that Mills failed to prove that the State obtained Mills's sentence through fraud on the court. It identified "misstate[ments]" in Glenn's fee declaration, stated that Bostick had alleged in his affidavit that the State did *not* offer JoAnn a plea deal before she testified, and explained that, if Glenn's affidavit "[were] to be believed," Glenn would have sat silently in court in 2007 as he

24-11661                Order of the Court                5

knowingly watched both JoAnn and Bostick repeatedly perjure themselves. Third, the district court denied relief under Rule 60(b)(6), which allows relief for "any other reason that justifies relief." It ruled that the motion was not "made within a reasonable time." *Id.* R. 60(c)(1). And it denied Mills a certificate of appealability and his motion for a stay of execution.

## II. STANDARD OF REVIEW

A party who seeks to appeal the denial of a motion for relief from a judgment denying habeas relief must obtain a certificate of appealability. *See Gonzalez v. Sec'y for Dep't of Corr.*, 366 F.3d 1253, 1263 (11th Cir. 2004), *aff'd on other grounds sub nom. Gonzalez v. Crosby*, 545 U.S. 524 (2005). We may issue a certificate "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The applicant must establish that jurists of reason could disagree with the resolution of his constitutional claims or that jurists could conclude that "the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because Rule 60 "vests wide discretion in [district] courts," we ask whether a reasonable jurist could conclude that the district court abused its discretion. *See Buck v. Davis*, 137 S. Ct. 759, 777 (2017). A district court abuses its discretion when it applies an incorrect legal standard, follows improper procedures, makes clearly erroneous factual findings, or applies the law unreasonably. *Loc. 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248, 1253 (11th Cir. 2014).

### III. DISCUSSION

Mills seeks a certificate of appealability on three grounds. He argues that a reasonable jurist could conclude that the district court abused its discretion in denying relief under Rule 60(b)(2), Rule 60(b)(3) and (d)(3), and Rule 60(b)(6). We reject each argument.

*A. No Reasonable Jurist Could Conclude That the District Court Abused its Discretion in Denying Relief Under Rule 60(b)(2).*

Mills argues that reasonable jurists could debate whether the district court abused its discretion in denying his motion for relief under Rule 60(b)(2) as untimely. He argues that the time limit in clause (c)(1) does not apply to his motion because Rule 60 "does not limit" a court's power to "set aside a judgment for fraud on the court." *See* FED. R. CIV. P. 60(d)(3). He argues that Bostick committed fraud on the court.

No reasonable jurist could conclude that the district court abused its discretion in rejecting this argument. We interpret the Federal Rules based on their "plain text." *See City of Jacksonville v. Jacksonville Hosp. Holdings, L.P.*, 82 F.4th 1031, 1034 (11th Cir. 2023); *see also Rosenberg v. DVI Receivables XIV, LLC*, 818 F.3d 1283, 1288 (11th Cir. 2016). Rule 60(c)(1) states that a "motion under Rule 60(b)" "for reasons (1), (2), and (3)" must be made "no more than a year after the entry of the judgment or order" from which the movant seeks relief. FED. R. CIV. P. 60(c)(1). Mills sought relief from the November 30, 2020, judgment and filed his motion on April 5, 2024. Three-and-a-half years is "more than a year." *See id.*

24-11661                Order of the Court                7

*B. No Reasonable Jurist Could Conclude That the District Court Abused its Discretion in Denying Relief Under Rule 60(b)(3) and (d)(3).*

No reasonable jurist could conclude that the district court abused its discretion in denying Mills's motion under Rule 60(b)(3) as untimely and under subsection (d)(3) on the merits. The time limit in Rule 60(c)(1) expressly applies to relief under clause (b)(3) based on allegations of the opposing party's fraud, misrepresentation, or misconduct. *See id.* Our precedent forecloses Mills's argument to the contrary: when "more than one year passe[s] between the entry of the original judgment and the filing of [a motion under Rule 60(b)(3)], the plaintiff cannot seek relief under Rule 60(b)(3)." *Travelers Indem. Co. v. Gore*, 761 F.2d 1549, 1550–51 (11th Cir. 1985).

To be sure, there is "no time limit on setting aside a judgment" under Rule 60(d)(3). *See* 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2870 (3d ed. Apr. 2023). But a movant who seeks relief under clause (d)(3) must establish "fraud on the court," FED. R. CIV. P. 60(d)(3), by clear and convincing evidence, *see Booker v. Dugger*, 825 F.2d 281, 283 & n.4 (11th Cir. 1987). That standard is "demanding." *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005). The movant must establish that the alleged fraud is "highly probable." *See Bishop v. Warden, GDCP*, 726 F.3d 1243, 1258 (11th Cir. 2013). Fraud on the court involves a "direct assault on the integrity of the judicial process." 11 Wright, Miller & Kay, *Federal Practice & Procedure* § 2870. It "embrace[s] only that species of fraud" that officers of the court "perpetrate[]" against "the judicial machinery" and that "defile[s] the court itself." *Gore*,

761 F.2d at 1551 (citation and internal quotation marks omitted). It involves "an unconscionable plan or scheme." *See Davenport Recycling Assocs. v. Comm'r*, 220 F.3d 1255, 1262 (11th Cir. 2000) (citation and internal quotation marks omitted) (describing fraud on the court in the context of challenges to a decision of the Tax Court).

No reasonable jurist could conclude that the district court abused its discretion in ruling that Mills failed to establish that it is highly probable that the State hatched an unconscionable scheme. Mills does not dispute that "the dating of some of the relevant events is misstated" in Glenn's fee declaration. For example, the declaration states that Glenn attended trial on September 11 and 12, 2007, to watch JoAnn testify. It is undisputed that JoAnn testified instead on August 22, 2007. Mills dismisses these inconsistencies as "scrivener's errors" or an "inadvertent[]" "transposition of numbers," but the district court did not abuse its discretion in declining to credit a fee declaration with blatant errors about the very events at the heart of this controversy. And no reasonable jurist could conclude that the district court abused its discretion in assessing the *plausibility* of Glenn's affidavit. The district court concluded that, if the affidavit "[were] to be believed," Glenn witnessed both Bostick and JoAnn repeatedly perjure themselves on August 22, 2007, yet said nothing and then, as the Commissioner says, "held his tongue for nearly seventeen years." No reasonable jurist could conclude that the district court abused its discretion in ruling that Mills had not met the "demanding" standard of Rule 60(d)(3), *see Dretke*, 545 U.S. at 240, for proving that the State "defile[d] the court itself,"

24-11661                  Order of the Court                      9

*Gore*, 761 F.2d at 1551 (citation and internal quotation marks omitted).

*C. No Reasonable Jurist Could Conclude That the District Court Abused its Discretion in Denying Relief Under Rule 60(b)(6).*

Last, Mills argues that a reasonable jurist could conclude that the district court abused its discretion in denying the motion for relief under Rule 60(b)(6). He seeks relief on grounds identical to those on which he premised his requests for relief under Rule 60(b)(2) and (b)(3). But Rule 60(b)(6) states that a court may grant relief only "for . . . any *other* reason" than those listed in clauses (b)(1) through (b)(5). FED. R. CIV. P. 60(b)(6) (emphasis added); *see Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 (1988) (stating that Rule 60(b)(6) "grants federal courts broad authority to relieve a party from a final judgment . . . provided that the motion is . . . not premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5)"). As a leading treatise on federal civil practice puts it, "much authority" establishes that "clause (6) and the first five clauses [of Rule 60(b)] are mutually exclusive" and that "relief cannot be had under clause (6) if it would have been available under the earlier clauses." 11 Wright, Miller & Kane, *Federal Practice & Procedure* § 2864 (3d ed. Apr. 2023).

No reasonable jurist could conclude that the district court abused its discretion in denying relief under Rule 60(b)(6). Were we to read the Rule as Mills urges, the one-year limit in subsection (c)(1) would be superfluous. And his reading would make clauses (b)(1) through (b)(5) altogether "pointless." *See* Antonin

Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 26, at 176 (2012) (surplusage canon); *see also United States v. Jicarilla Apache Nation*, 564 U.S. 162, 185 (2011) ("[W]e are hesitant to adopt an interpretation . . . [that] renders superfluous another portion of th[e] same law." (citation and internal quotation marks omitted)). Although we agree with the district court that no reasonable jurist would think that Mills's motion for Rule 60(b)(6) relief was timely, we rule that no reasonable jurist would question the denial on the merits as supported by the record. *Cf. Haynes v. McCalla Raymer, LLC*, 793 F.3d 1246, 1249 (11th Cir. 2015) (we may affirm on any ground that the record supports when reviewing for abuse of discretion).

## IV. CONCLUSION

We **DENY** Mills's application for a certificate of appealability and **DENY AS MOOT** his motion to stay his execution.

24-11661              Abudu, J., Concurring                    1

ABUDU, Circuit Judge, Concurring:

The death penalty is the harshest punishment one can receive in this country. The Supreme Court has recognized that "the death penalty is qualitatively and morally different from any other penalty." *Sawyer v. Whitley*, 505 U.S. 333, 361 (1992) (Stevens, J. concurring); *see also Gregg v. Georgia*, 428 U.S. 153, 187 (1976) ("There is no question that death as a punishment is unique in its severity and irrevocability. When a defendant's life is at stake, the Court has been particularly sensitive to insure [sic] that every safeguard is observed." (citations omitted)); *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976) (noting "the need for reliability in the determination that death is the appropriate punishment in a specific case"). As a result, "it is of vital importance to the defendant and to the community that any decision to impose the death sentence be, and appear to be, the consequence of scrupulously fair procedures." *Sawyer*, 505 U.S. at 361 (internal quotation marks and brackets omitted).

I concur in the denial of Mills' motion for a certificate of appealability ("COA"). I write separately to express concern about the rigid interpretation and application of Rule 60(b)(6), particularly the "extraordinary circumstances" provision in a death penalty case when the petitioner is asserting actual innocence.

## I.      THE COA STANDARD

We may only grant a petitioner a COA if he "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Importantly, "[a]t the COA stage, the only question is

whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. 100, 115 (2017) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003)). This question must be decided without a full consideration of the factual or legal basis underlying the petitioner's claims. *Id.* To conduct such merits analysis at the COA stage "is in essence deciding an appeal without jurisdiction." *Miller-El*, 537 U.S. at 337.

Accordingly, at the COA stage, a petitioner does not have to show that his appeal will be successful once it is heard on the merits. *Id.* We cannot "decline the application for a COA merely because [we] believe[] the applicant will not demonstrate an entitlement to relief." *Id.* Instead, we must issue a COA where reasonable jurists could debate the issue presented, and "a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that [the] petitioner will not prevail." *Id.* at 338. At minimum, the petitioner seeking a COA must prove "something more than the absence of frivolity" or "good faith" on his part. *Id.* (internal quotation marks omitted).

## II.    RULE 60(b)(6) MOTIONS

We review for an abuse of discretion the district court's denial of a Rule 60(b)(6) motion. *Buck*, 580 U.S. at 122-23. Rule 60 provides a list of specific grounds on which a movant may seek relief from a death sentence, including for "any other reason that justifies

24-11661                Abudu, J., Concurring                3

relief." Fed. R. Civ. P. 60(b)(1)-(6). Relief under Rule 60(b)(6) is available only in "extraordinary circumstances." *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005). The case law supports a rejection of Mills' request for relief under Rule 60(b)(6) as duplicative of the arguments he raised under Rule 60(b)(2), (b)(3), and (d)(3), *see Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 863 (1988). However, the Supreme Court also has recognized that Rule 60(b)(6) "does not particularize the factors that justify relief." *Liljeberg*, 486 U.S. at 863-64. Moreover, the Court has emphasized that Rule 60(b)(6) relief is warranted "to vacate judgments *whenever* such action is appropriate to accomplish justice." *Id.* at 864 (emphasis added) (instructing courts to "consider the risk of injustice" and "the risk of undermining the public's confidence in the judicial process"); *see also Cano v. Baker*, 435 F.3d 1337, 1341-42 (11th Cir. 2006) (analyzing a party's Rule 60(b)(6) motion in conjunction with related Rule 60(b)(5) arguments).

### III.   RELEVANT TENANTS OF FUNDAMENTAL FAIRNESS AT TRIAL

Prosecutors play a special role "in the search for truth in criminal trials." *Strickler v. Greene*, 527 U.S. 263, 281 (1999). As a result, the court, defendants, and juries expect prosecutors to refrain from using improper methods to secure a conviction. *Banks v. Dretke*, 540 U.S. 668, 696 (2004).

The Supreme Court has issued many rulings outlining a prosecutor's duties to the court, litigants, and juries. Most relevant here, prosecutors cannot suppress "evidence favorable to an accused . . .

where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  The essential elements of a *Brady* claim include: (1) the evidence at issue must be favorable to the petitioner because it was either exculpatory or *impeaching*; (2) the evidence was suppressed by the state, either willfully or *inadvertently*; and (3) the petitioner suffered prejudice.  *Banks*, 540 U.S. at 691 (citing *Strickler*, 527 U.S. at 281-82).  Thus, "prosecutor[s] may [not] hide," nor must a petitioner "seek" out, the existence of *Brady* materials.  *Id*. at 696 (internal quotation marks omitted).

Additionally, prosecutors have an obligation to correct false testimony once it is stated in court.  *Napue v. Illinois*, 360 U.S. 264, 269 (1959).  In fact, "[t]he principle that a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction, implicit in any concept of ordered liberty, *does not cease to apply merely because the false testimony goes only to the credibility of the witness*."  *Id*. (emphasis added).  As the Supreme Court recognized, "[t]he jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend."  *Id*.

## IV.   MILLS HAS MET THE THRESHOLD REQUIREMENT TO OBTAIN A COA

In applying the above legal framework, Mills has met the threshold requirement to obtain a COA on the issues of: (1) whether the district court abused its discretion in denying his Rule 60(b)(6) motion as untimely; and (2) whether reasonable jurists could debate the district court's determination that Mills did not establish "extraordinary circumstances" entitling him to relief. *Buck*, 580 U.S. at 116 ("That a prisoner has failed to make the ultimate showing that his claim is meritorious does not logically mean he failed to make a preliminary showing that his claim was debatable.").

At the very moment JoAnn (Mills' ex-wife and the star witness of the State's case against him) testified at his trial, Mills has asserted that JoAnn was offered a favorable plea deal in exchange for her testimony against him.  In fact, Mills has raised this issue no less than 15 times before varying trial, state, and post-conviction courts—each time to no avail.  In these instances, the courts denied his claim in reliance on the State's affirmation, made in open court, that it did not offer JoAnn a "promise . . . maybe . . . nudge . . . [or] wink" that she would receive a favorable plea should she testify against Mills.  The district court, when it denied Mills' initial 28 U.S.C. § 2254 petition, also relied on the State's averments.  This Court then denied Mills a COA to appeal the § 2254 petition's denial, meaning this Court has yet to hear Mills' case on the merits.

6                          Abudu, J., Concurring                        24-11661

Now, Mills has obtained an affidavit from JoAnn's trial attorney, Tony Glenn, and additional information that JoAnn met with state officials before she testified in court against Mills and that a plea deal was discussed. Specifically, Glenn affirmed that he engaged in pre-trial discussions with the district attorney and the victims' daughter regarding JoAnn avoiding the death penalty if she "testified truthfully" at Mills' trial. According to Glenn, before Mills' trial, the victims' daughter agreed not to oppose the State offering JoAnn a plea deal, and the district attorney agreed to not pursue the death penalty against JoAnn—so long as she "testified truthfully" at Mills' trial.

In response, the State submitted two affidavits—one from the district attorney who prosecuted the case and another from the former investigator on the case. The district attorney admitted that JoAnn and her attorney visited his investigator before Mills' trial but denied that the investigator offered her a plea deal or had the authorization to do so. The district attorney also affirmed that he did not offer JoAnn a plea deal because the victims' family wanted to pursue the death penalty, and it was not until after JoAnn testified that the family became comfortable with the state offering JoAnn life imprisonment. The former investigator explained that he encouraged JoAnn to testify and that he did not offer her a plea deal either.

As the record shows, JoAnn did in fact testify at Mills' trial, placing all the blame on Mills for the victims' deaths, while her attorney sat in the courtroom observing the testimony. At trial, she stated

24-11661          Abudu, J., Concurring                    7

she was not offered any promises or deals in exchange for her testimony. The State asserted the same when asked by Mills' counsel. Nevertheless, ten days after Mills was found guilty, the state dismissed the capital murder charges against JoAnn.

Mills' theory of defense primarily rested on the following facts. First, that although JoAnn pointed the finger at Mills during trial, she initially gave two statements to police implicating Benji Howe—a local drug dealer—as the perpetrator of these horrendous crimes. Additionally, record evidence showed that Mills' DNA was not found on the murder weapons, Howe had equal access and opportunity to place the victims' belongings in the trunk of Mills' car, and Howe was found with the victims' prescription pills in his possession along with a large amount of money. Moreover, Howe's alibi for the date of the incident proved shaky at best, with conflicting witness statements given regarding Howe's whereabouts on the day of the murders.

In denying Mills' claim, the district court found it impossible to believe that the district attorney and JoAnn would have perjured themselves when questioned about whether a plea deal existed to decrease JoAnn's sentence in exchange for her testimony identifying Mills as the killer, and that JoAnn's defense attorney would not have objected or otherwise informed the court of the malfeasance. Yet, Mills produced Glenn's affidavit attesting under oath that such a plea deal in advance of her testimony indeed did exist, and he provided the general date and participants of the alleged plea deal meetings.

The questions that the varying accounts between the district attorney, JoAnn, and Glenn's version of events present, including why JoAnn's attorney would sign an affidavit against his client's interests that could jeopardize his own legal career, are issues the Court need not address at this COA stage. Those factual issues should be resolved by the district court after an evidentiary hearing. Instead, at this phase in Mills' death penalty case, we look to the record evidence only to determine whether a reasonable jurist could debate whether the district court abused its discretion in denying Mills' Rule 60(b)(6) motion on the grounds that "extraordinary circumstances" did not warrant relief. Mills has sufficiently alleged the denial of a constitutional right—the right to have impeachment evidence disclosed to him and the right to ensure his trial is not infected with perjured testimony. *Brady*, 373 U.S. at 87; *Napue*, 360 U.S. at 269. Mills also has demonstrated that, without relief, there exists a "risk of injustice" and "risk of undermining the public's confidence in the judicial process." *Buck*, 580 U.S. at 123. This is especially true given that Mills has maintained his innocence.

Unfortunately, even when a petitioner's life hangs in the balance, our case law does not extend sufficient procedural and substantive due process protections.