[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-15138

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 19, 2012
JOHN LEY
CLERK

D.C. Docket No. 03-80612-CV-KAM

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff-Appellee,

versus

MICHAEL LAUER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 19, 2012)

Before MARTIN, HILL and EBEL,[*] Circuit Judges.

PER CURIAM:

---

[*] Honorable David M. Ebel, United States Circuit Judge for the Tenth Circuit Court of Appeals, sitting by designation.

Michael Lauer raises a host of challenges to the district court's grant of summary judgment against him in this civil enforcement action brought by the Securities and Exchange Commission ("SEC"). He challenges the terms of the freeze of his assets; the venue of the litigation; various court findings relating to his liability; the amount of alleged ill-gotten gains he has been required to disgorge; and the amount of interest he must pay on that disgorgement. After careful review of the parties' briefs and the record, and with the benefit of oral argument, we affirm.

## I.

The pertinent facts and procedural history of this case are capably set forth in the district court's Order and Opinion. For our purposes, it is sufficient to say that Lauer was a founder, the sole manager and principal owner of Lancer Mgmt. Group LLC and Lancer Mgmt. Group II LLC (together, "Lancer"), and in that capacity he controlled the operations and activities of several hedge funds (together, the "Funds").

The SEC brought this action against Lauer on July 3, 2008, alleging that he had engaged in a multi-year scheme to defraud the Funds' investors.[1] According

---

[1] Specifically, the SEC alleged that Lauer had violated: Sections 17(a)(1)-(3) of the Securities Act; Section 10(b) of the Exchange Act, and accompanying Exchange Act Rule 10b-5; Section 20(a) of the Exchange Act; and Sections 206(1) and (2) of the Advisers Act. See 15

2

to the SEC, Lauer's scheme relied on misrepresenting the true value of the Funds by artificially inflating the value of holdings in thinly-traded shell companies, allowing Lancer to collect higher fees from investors and to attract new investors by claiming better-than-market returns. To hide the scheme, Lauer made numerous misrepresentations in the Funds' private placement memoranda ("PPMs"), used fake "model portfolios," and made false statements in investor newsletters and calls. In the five years following the filing of the SEC's complaint, this case was litigated in the Southern District of Florida. During that entire time, Lauer's assets were frozen.

On September 28, 2008, the district court granted the SEC's motion for summary judgment as to Lauer's liability. Seven months later, the district court issued an Order requiring Lauer to disgorge $62 million—$44 million in ill-gotten gains and another $18 million of prejudgment interest charged at the IRS underpayment rate.

## II.

We review a district court order granting summary judgment <u>de novo</u>, viewing all facts in the light most favorable to Lauer as the non-moving party and drawing all inferences in his favor. <u>Burger King Corp. v. E-Z Eating, 41 Corp.</u>,

U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5; 15 U.S.C. § 77q(a); 15 U.S.C. § 78t(a); 15 U.S.C. § 80b-6.

3

572 F.3d 1306, 1312–13 (11th Cir. 2009). We review the following issues Lauer raises for an abuse of discretion: the district court's orders relating to an asset freeze; its denial of a motion to dismiss for lack of venue or to transfer to another district; and the district court's award of disgorgement and prejudgment interest. SEC v. ETS Payphones, Inc., 408 F.3d 727, 731 (11th Cir. 2005) (asset freeze); Palmer v. Braun, 376 F.3d 1254, 1257 (11th Cir. 2004) (venue transfer); SEC v. Warren, 534 F.3d 1368, 1369 (11th Cir. 2008) (disgorgement); Mut. Serv. Ins. Co. v. Frit Indus., Inc., 358 F.3d 1312, 1325 (11th Cir. 2004) (prejudgment interest).

### III.

First, Lauer claims that the district court abused its discretion in imposing, and declining to modify, the freeze it imposed on his assets. Lauer argues that the asset freeze was improper because it did not provide for his living or litigation expenses, and encompassed assets he claimed were earned before the period of the alleged fraud.

The district court may freeze assets in order to preserve funds while a party seeks an equitable remedy such as disgorgement. ETS Payphones, 408 F.3d at 734. As the party seeking the freeze, the SEC must provide a reasonable approximation of the funds subject to disgorgement and, if potential disgorgement is greater than the value of the defendant's assets, the district court can order a full asset freeze. See id. at 734–36.

By offering only estimates as to his net worth, Lauer did not meaningfully rebut the SEC's showing that his potential disgorgement exceeded his net worth. See id. at 735–36 (holding that, since the defendant failed to prove that his assets exceeded the potential disgorgement amount, a total freeze was appropriate). As a result, the district court would have been unable, based on the information before it, to freeze specific assets while releasing funds that Lauer claims should have been excluded. Beyond this, the district court expressed concern that the value of the assets would diminish if they were not frozen. Those facts, combined with the broad discretion district courts have in this realm, lead us to conclude that the district court's decisions in ordering and refusing to modify the asset freeze a second time, though perhaps heavy-handed, were not an abuse of discretion. See 15 U.S.C. § 78u(d)(5) (the SEC "may seek, and any Federal court may grant, any equitable relief that may be appropriate or necessary for the benefit of investors").

IV.

Next, Lauer argues that the district court abused its discretion in denying his motion to dismiss for lack of venue and his motion to transfer venue. The SEC filed the present complaint in the Southern District of Florida in July 2003. When eight months later Lauer moved to dismiss or transfer the case based on venue considerations, the district court denied his motion because: (1) Lauer had already consented to the court's jurisdiction; (2) venue was appropriate; and (3) the

5

equities weighed against changing venue. The district court also denied a follow-up motion upon finding that Lauer did not demonstrate sufficiently changed circumstances.

In securities actions, venue is proper "in the district wherein the defendant is found or is an inhabitant or transacts business." 15 U.S.C. § § 77v(a), 78aa; see also 15 U.S.C. § 80b-14. A defendant may move to dismiss a lawsuit for improper venue, Fed. R. Civ. P. 12(b)(3), or move to transfer a civil action to any other district where it might have been brought upon showing that doing so will be convenient for the parties and witnesses, and serve the interests of justice, 28 U.S.C. § 1404(a). But the "plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations, " and a transfer that would only shift inconvenience from the defendant to the plaintiff does not outweigh the plaintiff's choice for Section 1404(a) purposes. Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 260 (11th Cir. 1996) (quotation marks omitted).

By submitting to the court's authority on a number of occasions before contesting venue, Lauer arguably waived his venue objection. See, e.g., Baragona v. Kuwait Gulf Link Transp. Co., 594 F.3d 852, 854 (11th Cir. 2010) (noting that appearance sufficient to waive personal jurisdiction defense). But even if Lauer did not waive venue, the record supports the district court's venue decisions. Venue was proper at the outset, since several of the businesses whose stock Lauer

was alleged to manipulate were located in Florida, and he commissioned allegedly fraudulent valuations of these companies using firms located there. Further, while venue might have been as appropriate in other locations, there were good reasons not to transfer by the time Lauer filed his venue motion. The SEC staff, the Receiver, and all of the evidence were located in the Southern District of Florida; and numerous motions were pending before the district court, which was by then familiar with the case. Thus, while transfer might have benefitted Lauer, it would have inconvenienced all the other actors in the case, and was not therefore required. See Robinson, 74 F.3d at 260. As a result, we conclude that the district court did not abuse its discretion in denying Lauer's motions relating to venue.

V.

Lauer presents several arguments for why the district court erred in awarding partial summary judgment to the SEC with respect to his liability. Generally, a party moving for summary judgment has the burden of showing that there is no genuine issue of fact. Burger King, 572 F.3d at 1313. If the moving party succeeds in this, the burden shifts to the non-moving party to show that issues of material fact exist. Id. Litigants who fail to brief issues on appeal, or who only raise issues for the first time in a reply brief, have abandoned those issues. Timson v. Simpson, 518 F.3d 870, 874 (11th Cir. 2008).

We address each of Lauer's arguments in turn. First, Lauer claims the district court erred by concluding that the California judgment estopped him from contesting his manipulation of TFGP stocks. The estoppel effect of a judgment is determined by the laws in the judgment's jurisdiction, in this case California. See Hart v. Pullman, Inc., 764 F.2d 1443, 1447 n.4 (11th Cir. 1985). Under California law, the default judgment entered against Lauer in that state's courts estops him from contesting the allegation that he manipulated TFGP stocks. See Gottlieb v. Kest, 46 Cal. Rptr. 3d 7, 34 (Cal. Ct. App. 2006) (stating that California "accords collateral estoppel effect to default judgments, at least where the judgment contains an express finding on the allegations").

Second, Lauer asserts a "rule of completeness" violation since the SEC submitted only partial depositions into evidence. Although Lauer is correct that the SEC did this, Lauer never submitted the remaining deposition portions he desired, and never moved the court to compel the SEC to submit the complete documents, as the Federal Rules of Civil Procedure permit. See Fed. R. Civ. P. 32(a)(6). As a result, no rule of completeness violation occurred. See Fed. R. Evid. 106.

Third, Lauer argues that Morrison v. Nat'l Austl. Bank, Ltd., 130 S. Ct. 2869 (2010) forecloses liability for securities traded overseas. But, despite Lauer's claim to the contrary, the Morrison issue is not jurisdictional, but is a

8

merits question.  See Morrison, 130 S. Ct. at 2877 ("[T]o ask what conduct § 10(b) reaches is to ask what conduct § 10(b) prohibits, which is a merits question.").  As a result, Lauer had to raise this at the district court, even though the authority for his argument was decided after he filed his initial brief in this Court.  See United States v. Nealy, 232 F.3d 825, 830 (11th Cir. 2000) ("Parties must submit all issues on appeal in their initial briefs. . . . [P]arties cannot properly raise new issues at supplemental briefing, even if the issues arise based on the intervening decisions or new developments cited in the supplemental authority.").  Lauer did not raise the argument, so the argument was waived.  For the same reason, Lauer has waived his arguments that Janus Capital Grp., Inc. et al., v. First Derivative Traders, 131 S. Ct. 2296 (2011) prevents him from being liable for making false statements, and that he should be able to rely on expert testimony given in his criminal proceedings.  See id.

We now move to the objections Lauer raises to the district court's factfindings.  Lauer was required to present more than mere allegations in opposing the SEC's motion for summary judgment.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322–33, 106 S. Ct. 2548, 2552–53 (1986).  The district court concluded that he failed to do so, explicitly stating that it chose not to give weight to what it regarded as Lauer's conclusory claims.

Though Lauer argues that he could not have manipulated stocks, the California judgment estops him from arguing that he did not manipulate TFGP stocks; and, even apart from those facts Lauer is estopped from contesting, the district court found ample other evidence of stock manipulation as well.

With respect to the alleged disclosure violations, Lauer is correct that disclosure duties differ for hedge funds as compared to other securities contexts.[2] But the district court certainly did not err in its holding that the laws do not permit affirmative misrepresentations to investors and potential investors. While Lauer had discretion in valuing the portfolio's holdings, and the Funds' marketing at least perfunctorily warned investors of the risks of investing, these facts would only have made a reasonable investor aware that valuation of the Funds' holdings was less reliable (and the value perhaps less stable) than typical market-traded securities. We are, however, aware of no legal support for the idea that these warnings would have negated investors' expectation that Lauer would operate in good faith to determine the most accurate value for the Funds, and to report the Funds' holdings truthfully. The district court had before it overwhelming evidence of Lauer's knowing false statements, coming in a number of forms

---

[2] See, e.g., Goldstein v. SEC, 451 F.3d 873, 875 (D.C. Cir. 2006) ("While mutual funds, for example, must register with the [SEC] and disclose their investment positions and financial condition, hedge funds typically remain secretive about their positions and strategies, even to their own investors.").

(PPMs, newsletters, fake portfolios, and conference calls), pertaining to a variety of issues (portfolio positions, the status of audits, concerns of auditors, and staff backgrounds), and made to several investors, auditors, and potential investors. Further, the record includes specific, uncontroverted evidence that these knowing misrepresentations were material, with individual investors in fact basing their decisions on the false information Lauer provided them. Lauer has not countered these showings with evidence of his own.

Last, Lauer argues that, as a hedge fund manager, he was not an "investment adviser" within the terms of the Advisers Act. See 15 U.S.C. § 80a-2(a)(20) (defining "investment adviser"). Lauer is correct that, since many hedge funds have a passive investor model, not all hedge fund investors are automatically to be treated as clients of a hedge fund adviser. But, as the Sixth Circuit has persuasively explained, a client-adviser fiduciary relationship can arise when a hedge fund investor receives direct investment advice from a hedge fund adviser. United States v. Lay, 612 F.3d 440, 446–47 (6th Cir. 2010). Though Lauer served as the Funds' investment adviser by managing the Funds' day-to-day activities, he also proffered advice directly to the Funds' investors when he hosted meetings and teleconferences with investors, and when he suggested in the Funds' newsletter that his market strategy could beat market returns. This conduct brings him within the bounds of the term "investment adviser," for purposes of the Advisers Act. In

11

light of these conclusions, we affirm the district court's grant of summary judgment against Lauer.

## VI.

Last, Lauer claims that the district court abused its discretion in finding that he must disgorge $62 million in assets—$44 in ill-gotten gains and $18 million in prejudgment interest. He disputes the amount of ill-gotten gains found by the district court. And he also argues that the interest accrual is inappropriate because he did not have control over the assets during the trial, and the wrong interest rate was applied.

Disgorgement is an equitable remedy intended to prevent unjust enrichment. Commodity Futures Trading Comm'n v. Sidoti, 178 F.3d 1132, 1138 (11th Cir. 1999). To be entitled to disgorgement, the SEC needs only to produce a reasonable approximation of the defendant's ill-gotten gains. See S.E.C. v. Calvo, 378 F.3d 1211, 1217 (11th Cir. 2004) ("Exactitude is not a requirement; so long as the measure of disgorgement is reasonable, any risk of uncertainty should fall on the wrongdoer whose illegal conduct created that uncertainty." (quotations marks and alterations omitted)). Once the SEC presents its estimate, the burden shifts to the defendant to demonstrate that the SEC did not show that its estimate was a reasonable approximation. Id. But when "a defendant's record-keeping or lack thereof has so obscured matters that calculating the exact amount of illicit gains

12

cannot be accomplished without incurring inordinate expense," a court may set disgorgement at the "more readily measurable proceeds received from the unlawful transactions." Id. at 1217–18.

Evidence supports the district court's findings regarding ill-gotten gains. At the evidentiary hearing, the SEC's expert witness provided a reasonable approximation of Lauer's ill-gotten gains. Lauer then failed to rebut that initial showing by the SEC. As a result, he bore the risk of any remaining uncertainty being construed against him, particularly in light of the expert's testimony that Lancer's financial records were lacking essential information. See Calvo, 378 F.3d at 1218. Therefore, the district court did not abuse its discretion in finding that Lauer received over $43.6 million in ill-gotten gains, and that all of these gains were earned during the fraud period.

Along with disgorgement, the district court may also award prejudgment interest, and has wide discretion in making that calculation. See S.E.C. v. Carillo, 325 F.3d 1268, 1269 (11th Cir. 2003). We have noted that awards of prejudgment interest are compensatory, not punitive, and that the district court should make its interest decision through "an assessment of the equities." See Osterneck v. E.T. Barwick Indus., Inc., 825 F.2d 1521, 1536 (11th Cir. 1987). Here, the district court did not abuse its discretion by applying the commonly-used IRS underpayment rate. See 26 U.S.C. § 6621(a)(2) (defining the IRS underpayment

rate as the Federal Reserve short-term interest rate plus three percentage points).[3]

While some of this litigation's duration may not be attributable solely to Lauer, the district court acted within its discretion in deciding that the equities called for disallowing Lauer from being unjustly enriched by collecting interest on his ill-gotten gains.

## VII.

For these reasons, we deny the claims Lauer raised in this appeal and affirm the district court's grant of summary judgment.

**AFFIRMED.**

---

[3] Other circuits have observed with approval the use of this rate.  See SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1476 (2d Cir. 1996) (ruling that this rate "reasonably approximates one of the benefits the defendant derived from its fraud" and affirming its use over the alternatively proposed interest rate for Treasury bills); SEC v. Wireless Int'l Corp., 617 F.3d 1072, 1099 (9th Cir. 2010) (same).  And district courts in this Circuit have "without controversy" also taken to using this rate.  SEC v. Yun, 148 F.Supp.2d 1287, 1293 (M.D. Fla. 2001); see, e.g., SEC v. Huff, 758 F.Supp.2d 1288, 1363 (S.D. Fla. 2010); SEC v. Aleksey, 2007 WL 1789113, (M.D. Fla. June 19, 2007).