[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-13110

_____

D.C. Docket No. 9:03-cv-80612-KAM

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff-Appellee,

MARTY STEINBERG,
Receiver,

Intervenor,

versus

MICHAEL LAUER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 21, 2015)

Before TJOFLAT, WILLIAM PRYOR, and BARKSDALE,* Circuit Judges.

WILLIAM PRYOR, Circuit Judge:

_____

* Honorable Rhesa H. Barksdale, United States Circuit Judge for the Fifth Circuit, sitting by designation.

In this appeal, we must decide whether to set aside a judgment for over $60 million against Michael Lauer. In 2008, the Securities and Exchange Commission obtained the judgment against Lauer on the basis of violations of multiple securities laws. Lauer appealed the judgment to our Court and we affirmed. *Sec. & Exch. Comm'n v. Lauer*, 478 F. App'x 550, 558 (11th Cir. 2012). Lauer then moved to vacate the judgment as void under Federal Rule of Civil Procedure 60(b)(4), and he moved to vacate the judgment under Rule 60(d)(3) for fraud on the court. The district court denied relief and Lauer's requests for discovery. We affirm.

## I. BACKGROUND

In 2003, the Commission filed a civil enforcement action against Lauer and his management groups, Lancer Management Group, LLC, and Lancer Management Group II, LLC, and alleged that he violated numerous securities laws in his management of multiple hedge funds. The "Request for Commission Action" form that the Commission used to initiate proceedings against Lauer was signed by four of the five commissioners, but two of those commissioners had initials signed next to their names that did not match their initials.

On the same day that it filed the complaint, the Commission moved, *ex parte*, for a temporary restraining order to freeze Lauer's assets and for an order to appoint a receiver. The district court appointed the receiver, granted the restraining

order, and scheduled a hearing for a preliminary injunction to enforce the same terms as the restraining order, including the asset freeze. The hearing became unnecessary because Lauer consented to the preliminary injunction.

The district court later granted Lauer's request to modify the asset freeze so that Lauer could sell various properties he owned, pay off any encumbrances, and remit the remaining proceeds to the receiver, who would pay all of Lauer's outstanding legal fees and then pay Lauer $10,000 per month in living and legal expenses. Not satisfied with this arrangement, Lauer moved to reconsider the asset freeze so that he would not have to sell any property. At the hearing on his motion, Lauer told the district court he "would prefer the court to just vacate the original order to modify [his] request," so that he would not have to sell his house. The district court reinstated the original asset freeze order.

Also in 2003, the British Virgin Islands Financial Services Commission began an investigation into Lauer and his hedge funds. The Financial Services Commission hired Deloitte & Touche, an accounting firm, to prepare a report for use in litigation against Lauer and the funds. Deloitte & Touche prepared the report using "publicly available information" and documents provided by the Financial Services Commission. The local attorney for Lauer's hedge funds, Simon Pasco, hired Milton Barbarosh, a professional business evaluator, to analyze the Deloitte & Touche report. Barbarosh's lawyer then told the Securities and Exchange

3

Commission that Barbarosh was willing to work as a confidential informant. Barbarosh provided the Deloitte & Touche report to the Commission.

In 2004, Lauer moved to transfer venue from the Southern District of Florida to a district court in New York or Connecticut. The Commission opposed the motion and asserted that key witnesses would be inconvenienced by a transfer, including Barbarosh; George Levie, who allegedly produced bogus valuations for the hedge funds; and Lawrence Isaacson, who ran one of the shell corporations that Lauer manipulated. The district court denied Lauer's motion. Barbarosh, Levie, and Isaacson each invoked their Fifth Amendment right against self-incrimination to avoid being deposed.

In May 2004, Lauer filed a motion to recuse Chief Judge William Zloch, 28 U.S.C. §§ 144, 455, based on the Chief Judge's alleged "palpable predetermination of the defendant's guilt." Lauer cited the Chief Judge's comments at a hearing on the asset freeze. After Lauer had complained of the difficulty of defending the action on only $10,000 a month, the Chief Judge responded that legal processes can be difficult:

> The Court: Some of these processes are painful, Mr. Lauer.
>
> Mr. Lauer: Well, I concur, your honor. That's why I wanted to resolve them as quickly as possible.
>
> The Court: Are they any less painful by the way that you used your process of marking the close?

Mr. Lauer: We were not marking the close, Your Honor.

The Court: You weren't.

Mr. Lauer: No, absolutely not. We said that under oath. And I am—as I said, I was pleading to have an early trial as early as possible—

The Court: All right.

Mr. Lauer: —so we can resolve the issue.

Lauer also argued that the Chief Judge's consistent pattern of ruling against Lauer and his "condescending tenor" supported recusal. Chief Judge Zloch denied the motion because Lauer failed to allege personal instead of judicial bias.

In June 2004, the case was randomly selected by the Clerk of Court for reassignment, "to insure the fair and impartial reassignment of cases from the calendars of the respective judges of the court to the calendars of the new judges of the court." The case was reassigned to Judge Marcia Cooke, who had joined the court a month earlier. Judge Cooke recused herself soon after and transferred the case back to Chief Judge Zloch, who then recused himself and referred the case to the Clerk for random reassignment.

The case was reassigned to Judge Marra. In a declaration attached to his motion to vacate, Lauer alleges that he called Judge Marra's chambers to find out how she had been assigned the case and that one of her law clerks told him that "[Chief] Judge Zloch had picked Judge Marra as his successor and that he was entitled to do that as [C]hief [J]udge." In 2012, Lauer asked the Clerk by mail how

5

the reassignment process happened. The Clerk confirmed that the assignment had been random.

In 2008, the district court granted summary judgment against Lauer and in favor of the Commission and ordered disgorgement, a payment of prejudgment interest, and a civil penalty. Lauer appealed to our Court, and we affirmed the district court on all grounds. *Lauer*, 478 F. App'x at 558. In 2013, Lauer moved to vacate the judgment as void under Federal Rule of Civil Procedure 60(b)(4), and he moved to vacate the judgment due to fraud on the court based on Rule 60(d)(3). He also moved the district court to grant an evidentiary hearing and to allow him to take discovery. The district court denied all relief.

## II.  STANDARDS OF REVIEW

This appeal is governed by two standards of review. First, we review *de novo* the denial of a motion under Rule 60(b)(4). *Burke v. Smith*, 252 F.3d 1260, 1263 (11th Cir. 2001). Second, we review for abuse of discretion the denial of a motion under Rule 60(d)(3) based on fraud on the court. *See Cox Nuclear Pharm., Inc. v. CTI, Inc.*, 478 F.3d 1303, 1314 (11th Cir. 2007). And we review for abuse of discretion decisions about discovery. *United States v. R&F Props. of Lake Cnty., Inc.*, 433 F.3d 1349, 1355 (11th Cir. 2005).

### III. DISCUSSION

We divide our discussion in three parts. First, we explain that Lauer has failed to establish that the judgment is void. Second, we explain that Lauer has failed to establish a fraud on the court. Third, we explain that the district court did not abuse its discretion when it denied Lauer discovery and an evidentiary hearing.

*A. Lauer Fails to Establish that the Judgment is Void.*

Federal Rule of Procedure 60(b)(4) provides that a court may "relieve a party or its legal representative from a final judgment" if "the judgment is void." Fed. R. Civ. P. 60(b)(4). "[A] void judgment is one so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final. The list of such infirmities is exceedingly short . . . ." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270, 130 S. Ct. 1367, 1377 (2010) (internal citation omitted). "Rule 60(b)(4) applies only in the rare instance where a judgment is premised either on a . . . jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *Id*. at 271, 130 S. Ct. at 1377. "[I]t is well-settled that a mere error in the exercise of jurisdiction does not support relief under Rule 60(b)(4)." *In re Optical Techs., Inc*., 425 F.3d 1294, 1306 (11th Cir. 2005) (internal quotation marks and citation omitted).

And the "law is clear that Rule 60(b) may not be used to challenge mistakes of law which could have been raised on direct appeal." *Am. Bankers Ins. Co. of*

7

*Fla. v. Nw. Nat'l Ins. Co.*, 198 F.3d 1332, 1338 (11th Cir. 1999). Where a "party has been afforded a full and fair opportunity to litigate . . . the party's failure to avail itself of that opportunity will not justify Rule 60(b)(4) relief." *Espinosa*, 559 U.S. at 276, 130 S. Ct. at 1380. "Rule 60(b)(4) does not provide a license for litigants to sleep on their rights." *Id.* at 275, 130 S. Ct. at 1380. And "[u]nder the 'law of the case' doctrine, the findings of fact and conclusions of law by an appellate court are generally binding in all subsequent proceedings in the same case in the trial court or on a later appeal." *Transamerica Leasing, Inc. v. Inst. of London Underwriters*, 430 F.3d 1326, 1331 (11th Cir. 2005) (internal quotation marks and citation omitted).

Lauer makes six arguments that the judgment is void: (1) the asset freeze unconstitutionally deprived him of the right to use his own funds to hire counsel; (2) the Commission did not properly authorize the action against Lauer; (3) the district court lacked subject matter jurisdiction; (4) the Commission interfered with his attorney-client relationship; (5) Chief Judge Zloch displayed impermissible bias; and (6) the entry of prejudgment interest was improper. All of his arguments fail. We explain each argument in turn.

### 1. The Asset Freeze Did Not Deny Lauer Due Process.

Lauer argues that the district court unconstitutionally denied him the use of his own funds to spend on legal counsel because it entered an injunction that froze

8

all of his assets, but this argument fails. We affirmed the freeze of Lauer's assets in his earlier appeal. *See Lauer*, 478 F. App'x at 554. Although Lauer argues that we did not address his argument about a denial of due process, the law of the case "comprehends things *decided by necessary implication* as well as those decided explicitly." *Transamerica Leasing, Inc.*, 430 F.3d at 1331 (internal quotation marks and citation omitted). In his earlier appeal, "Lauer argue[d] that the asset freeze was improper because it did not provide for his living or litigation expenses," but we held that the district court did not abuse its discretion. *Lauer*, 478 F. App'x at 554. If the district court had denied Lauer his right to counsel, that decision would have been an abuse of discretion. *See, e.g.*, *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1096 (11th Cir. 2004) ("A district court abuses its discretion if it applies an incorrect legal standard [or] follows improper procedures.") (internal quotation marks and citation omitted). Because we rejected it already, Lauer's argument is barred.

### 2. The Commission Approved the Action Against Lauer.

Lauer argues that the judgment must be vacated because the Commission never approved the action against him. The document used to initiate the action against Lauer was signed by four out of five commissioners, with one abstaining. But two of the commissioners had two sets of initials next to their names, and the second pair of initials did not match each respective commissioner's initials. Lauer

9

argues that this irregularity proves that the action was not approved by the required majority of commissioners.

Lauer's argument fails. The Commission used its seriatim process to initiate the action. Under that process, the commissioners individually consider the matter and then report their votes to the Secretary. 17 C.F.R. § 200.42(a). Lauer has pointed to no statute or regulation that requires a commissioner to use only his personal signature to report his vote. And the minor potential irregularity does not overcome the "presumption to which administrative agencies are entitled—that they will act properly and according to law." *Fed. Commc'n Comm'n v. Schreiber*, 381 U.S. 279, 296, 85 S. Ct. 1459, 1470 (1965).

### 3. The District Court Had Subject Matter Jurisdiction.

Lauer argues that the district court lacked subject matter jurisdiction to decide the case, but his argument fails. According to Lauer, the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a–78pp, one of the acts that Lauer violated, "does *not* authorize or empower the SEC to force registration, regulate or undertake enforcement actions against foreign companies, whose shares are listed *exclusively* on *offshore* exchanges." But Lauer admits that the Supreme Court ruled that this type of alleged defect is not jurisdictional in nature, *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 253–54, 130 S. Ct. 2869, 2876–77 (2010). Even if Lauer could prove that the district court erred, "a mere error in the exercise of

jurisdiction does not support relief under Rule 60(b)(4)," *In re Optical Techs., Inc.*, 425 F.3d at 1306 (internal quotation marks and citation omitted).

### 4. The Commission Did Not Violate Lauer's Due Process Rights When It Obtained the Deloitte & Touche Report.

Lauer argues that the Commission interfered with his attorney-client privilege when it enlisted Barbarosh to obtain the Deloitte & Touche report from Pasco, an attorney for the hedge funds in the British Virgin Islands, but his argument fails. Lauer could have raised this issue in his merits appeal, but he did not do so. The trial transcripts upon which Lauer relies were available to him during his merits appeal, and he even cited them in his reply brief before our Court. *See Scutieri v. Paige*, 808 F.2d 785, 794 (11th Cir. 1987) ("Evidence that is contained in the public records at the time of trial cannot be considered newly discovered evidence.") Lauer was "afforded a full and fair opportunity to litigate" and cannot now seek relief under Rule 60(b)(4). *Espinosa*, 559 U.S. at 276, 130 S. Ct. at 1380.

Moreover, the report that the Commission obtained was not privileged. The report was produced by an accounting firm, for the British Virgin Islands Financial Services Commission, for use in litigation *against* Lauer. And the firm "based" the report "on [its] review and analysis of the documents provided by the [British Virgin Islands Commission] and took into account publicly available information." Even if the Commission interfered with Lauer's attorney-client relationship, its

11

actions were not "so outrageous" that they "constitute[d] a constitutional violation." *United States v. Ofshe*, 817 F.2d 1508, 1516 (11th Cir. 1987). The only benefit that the Commission obtained was access to a report that was not privileged.

### 5. Chief Judge Zloch Did Not Impermissibly Fail to Recuse Himself or Rig the Reassignment of the Case.

Lauer argues that Chief Judge Zloch behaved impermissibly in two ways. First, Lauer alleges that the Chief Judge should have recused himself when Lauer moved for his recusal, 28 U.S.C. §§ 144, 455. Second, Lauer alleges that Chief Judge Zloch impermissibly influenced the reassignment of the case to Judge Marra. Both arguments fail.

Yet again, Lauer could have raised these arguments in his merits appeal, but he failed to do so. The relevant motions and reassignments took place years before the district court granted summary judgment in favor of the Commission. And Lauer's alleged conversation with Judge Marra's clerk occurred in the same timeframe. The only "new" evidence that Lauer includes in his motion to vacate is a series of communications with the Clerk of the District Court, in which the Clerk confirms that the process was random. Lauer's "failure to avail [himself] of th[e] opportunity [to litigate] will not justify Rule 60(b)(4) relief." *Espinosa*, 559 U.S. at 276, 130 S. Ct. at 1380.

12

Lauer's arguments also fail on the merits. "[A]dverse rulings alone do not provide a party with a basis for holding that the court's impartiality is in doubt." *United States v. Berger*, 375 F.3d 1223, 1227 (11th Cir. 2004) (internal quotation marks and citation omitted). And "bias and prejudice, to be a basis for disqualification, must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Clark*, 605 F.2d 939, 942 (5th Cir. 1979). The comments that Lauer cites do not suggest that Chief Judge Zloch was personally biased. Chief Judge Zloch's comment—"Are they any less painful by the way that you used your process of marking the close?"—was based on an exchange in which the Chief Judge explained to Lauer that legal processes can be difficult. When Lauer immediately denied "marking the close," the Chief Judge said "[y]ou weren't . . . [a]ll right" and the hearing continued.

And Lauer has failed to establish any mishandling of the reassignment process. Lauer argues that, despite denying his motion to recuse, Chief Judge Zloch later *sua sponte* recused himself "without providing a reason," and "[j]udges don't recuse themselves without a reason." But the change in judge was hardly mysterious. The case was selected for random reassignment to a new judge to maintain a balanced workload within the district. Judge Cooke, to whom it was reassigned, recused herself, so the case was returned to Chief Judge Zloch. Chief

13

Judge Zloch then recused himself so that the case would be randomly reassigned again, and this time it was Judge Marra who drew the assignment. Lauer's correspondence with the Clerk confirms that this process was random.

6. The Judgment is Not Void on the Basis of the Grant of Prejudgment Interest.

Lauer argues that the district court erred when it granted the Commission an award of almost $19 million in prejudgment interest because the interest was based on frozen assets to which Lauer had no access, but this argument is frivolous. The award of prejudgment interest has nothing to do with jurisdiction or due process, and cannot be the basis of a motion under Rule 60(b)(4). Moreover, Lauer made this argument in his merits appeal, and we rejected it. *See Lauer*, 478 F. App'x at 557–58.

### B. Lauer Fails to Establish that the Commission Committed a "Fraud on the Court."

Lauer argues that we must vacate the judgment because the Commission committed a "fraud on the court" when it told the district court that it planned to call witnesses who asserted their Fifth Amendment right against self-incrimination and refused to be deposed. Under Rule 60(d)(3), we can "set aside a judgment for fraud on the court." Fed. R. Civ. P. 60(d)(3). Lauer must prove the fraud by "clear and convincing evidence." *Booker v. Dugger*, 825 F.2d 281, 283 (11th Cir. 1987). And "[f]raud on the court is . . . limited to the more egregious forms of subversion of the legal process, . . . those we cannot necessarily expect to be exposed by the

14

normal adversary process." *Travelers Indem. Co. v. Gore*, 761 F.2d 1549, 1552 (11th Cir. 1985) (internal quotation marks and citation omitted) (holding that perjury does not establish fraud on the court).

Lauer's argument fails for two reasons. First, Lauer could have raised this argument in his merits appeal. The factual basis for the argument comes from transcripts from a criminal trial that took place from April to July of 2010, almost two years before our Court issued its decision in *Lauer*. Second, Lauer has not established by "clear and convincing evidence," *Dugger*, 825 F.2d at 283, that the Commission intentionally deceived the district court when it stated that it would call Barbarosh, Isaacson, and Levie as witnesses. "[W]hatever else it embodies, [fraud on the court] requires a showing that one has acted with an intent to deceive or defraud the court." *Robinson v. Audi Aktiengesellschaft*, 56 F.3d 1259, 1267 (10th Cir. 1995). Lauer has not established that the Commission knew that these witnesses would never testify.

At best, Lauer established that the Commission had a strained relationship with Barbarosh, Isaacson, and Levie. In August 2003, the Commission informed their attorney that it did not consider them confidential informants and that they must produce certain documents or face "appropriate action." Their attorney was nonplussed by the tone of the messages, but he responded that his clients still "intend[ed] to fully cooperate and remain available to assist the Commission with

15

any and all non-privileged matters." And even when they invoked their Fifth Amendment rights rather than be deposed, at least two of them stated that they did so with the hope that they could still testify at a later time. Accordingly, Lauer has failed to prove that the Commission committed a fraud on the court.

### C. Lauer is Not Entitled to Additional Discovery or an Evidentiary Hearing.

Lauer argues that he should have been granted discovery on the questions whether the Commission approved the action against him and whether Chief Judge Zloch influenced the reassignment of the case to Judge Marra, but we disagree. A district court does not "abuse its discretion both [where] it had a detailed record of the evidence before it and [where a party] did not adequately indicate how further discovery or a hearing would have aided the court's determination." *Scutieri*, 808 F.2d at 795. Lauer's argument that the complaint was not properly approved runs counter to the presumption that an agency follows the law, *see Schreiber*, 381 U.S. at 296, 85 S. Ct. at 1470, and he has presented no reason to believe that additional discovery would prove otherwise. Lauer also fails to explain what further discovery would accomplish regarding his claim of judicial bias. Notwithstanding Lauer's self-serving declaration, written a decade after the fact, the record evidence confirms that the process was handled correctly.

### IV. CONCLUSION

We **AFFIRM** the denial of Lauer's motions.

16